# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Los Angeles on 03/30/2022 03:12 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams,Deputy Clerk
22STCV10912
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Bruce Iwasaki

1  V. James DeSimone (SBN: 119668)
   **vjdesimone@gmail.com**
2  Carmen D. Sabater (SBN: 303546)
   **Cds820@gmail.com**
3  Emily C. Barbour (SBN: 337185) Of-Counsel
   **ebarbour@gmail.com**
4  **V. JAMES DESIMONE LAW**
5  13160 Mindanao Way, Suite 280
   Marina del Rey, California 90292
6  Telephone:  310.693.5561
7  Facsimile:  323.544.6880
   Email: **VJD000120@bohmlaw.com**
8

9  Attorneys for Plaintiffs,
   MARIA MARTHA ALVARADO, ANA CECILIA ALVARADO, and BRYAN ALVARADO,
10 individually, and as successors in interest to PASCUAL ALVARADO HERNANDEZ

11

12                    SUPERIOR COURT OF CALIFORNIA

13                      COUNTY OF LOS ANGELES

14 | MARIA MARTHA ALVARADO, ANA | Case No.: **22STCV10912**
15 | CECILIA ALVARADO, and BRYAN | 
   | ALVARADO, individually, and as successors | PLAINTIFF'S COMPLAINT FOR
16 | in interest to PASCUAL ALVARADO | DAMAGES:
   | HERNANDEZ,
17 |  | 1. DISABILITY DISCRIMINATION
   |  | (Cal. Gov't Code §§12940 et seq)
18 | Plaintiffs, | 2. FAILURE TO PROVIDE
   |  | REASONABLE ACCOMMODATION
19 | v. | (Cal. Gov't Code §§12940 et seq)
   |  | 3. FAILURE TO ENGAGE IN A GOOD
20 |  | FAITH INTERACTIVE PROCESS
   | VIE DE FRANCE YAMAZAKI, Inc., a | (Cal. Gov't Code §§12940 et seq)
21 | Virginia Corporation; RAYMOND | 4. FAILURE TO PREVENT
   | RODRIGUEZ, an individual, and DOES 1 | DISCRIMINATION
22 | through 50, inclusive, | 5. WRONGFUL DEATH FROM FEHA
23 |  | VIOLATIONS (Cal. Civ. Proc. Code §
   | Defendants. | 377.60)
24 |  | 6. ADVERSE EMPLOYMENT
25 |  | ACTION IN VIOLATION OF
   |  | PUBLIC POLICY
26 |  | 7. NEGLIGENCE RESULTING IN
27 |  | PAIN, SUFFERING, AND
   |  | PHYSICAL INJURY
28 |  | 8. NEGLIGENCE *PER SE* (Cal. Labor

1

Code § 6401)
9. NEGLIGENT INFLICTION OF
   EMOTIONAL DISTRESS
10. LOSS OF CONSORTIUM

DEMAND FOR JURY TRIAL

## CASE SUMMARY

Vie De France Yamazaki (hereinafter "DEFENDANT YAMAZAKI" or "YAMAZAKI") knew that its long-time mechanic of twenty-one (21) years, Pascual Alvarado Hernandez (hereinafter "Mr. Alvarado"), and his wife and children had disabilities that made them both uniquely vulnerable to death and serious illness from COVID-19. Nevertheless, YAMAZAKI refused to engage in a good faith interactive process with Mr. Alvarado regarding his requests for accommodations, refused to implement and enforce basic COVID-19 safety precautions at the plant (i.e., screening, distancing, and masking), refused to allow the reasonable accommodation of allowing Mr. Alvarado to go out on leave, and failed to comply with the COVID-19 safety rules and guidance adopted by the State of California, including the California Department of Public Health, even after Mr. Alvarado's death and subsequent violations cited by Cal-OSHA.

As a result of YAMAZAKI's blatant disregard of COVID-19 safety rules as well as their policies, practices, and omissions, Mr. Alvarado contracted COVID-19 from a coworker at the plant shortly after attending a meeting in small indoor cafeteria packed with 20-50 people, some visibly coughing with COVID-19 symptoms, and with no social distancing or masks. Although YAMAZAKI knew about Mr. Alvarado's family's disabilities that made them uniquely vulnerable to COVID-19, YAMAZAKI took no steps to protect Mr. Alvarado's family from "take home" exposure to COVID-19. On April 2, 2020, Mr. Alvarado was hospitalized. Within days after Mr. Alvarado was hospitalized with COVID-19, his entire family became sick with COVID-19 symptoms. To this day, Mr. Alvarado's family continue to suffer from long-haul, debilitating symptoms as a result of their battle with COVID-19, which include, but are not limited to, the following: fatigue; brain fog; and joint or muscle pain. Mr. Alvarado was looking forward to retiring to spend more time with his family, however, he spent the last weeks of his life intubated,

2

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:
V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1  and died alone on April 23, 2020.

2  <u>**PARTIES AND JURISDICTION**</u>

3  1.     This Complaint is brought by Maria Martha Alvarado, Ana Cecilia Alvarado, and

4  Bryan Alvarado, individually and as the heirs and successors of interest of Mr. Alvarado.

5  2.     At all relevant times to this Complaint, Plaintiff Maria Martha Alvarado

6  (hereinafter "Mrs. Alvarado"), the wife of decedent Pascual Alvarado Hernandez, is and has been

7  an individual residing in the home she shared with Pascual Alvarado Hernandez in Los Angeles

8  County.

9  3.     At all relevant times to this Complaint, Plaintiff Ana Cecilia Alvarado (hereinafter

10  "Ana"), the daughter of decedent Pascual Alvarado Hernandez, is and has been an individual

11  residing in the home she shared with Pascual Alvarado Hernandez in Los Angeles County.

12  4.     At all relevant times to this Complaint, Plaintiff Bryan Alvarado (hereinafter

13  "Bryan"), the son of decedent Pascual Alvarado Hernandez, is and has been an individual residing

14  in the home he shared with Pascual Alvarado Hernandez in Los Angeles County.

15  5.     At all times relevant to this Complaint, Defendant YAMAZAKI did business in

16  the County of Los Angeles, California where the events at issue in this action occurred.

17  6.     At all relevant times to this Complaint, Defendant RAYMOND RODRIGUEZ

18  (hereinafter "RODRIGUEZ" or "DEFENDANT RODRIGUEZ"), is an individual residing in Los

19  Angeles County.

20  7.     The true names and capacities, whether individual, corporate, associate,

21  governmental or otherwise, of DEFENDANTS DOES 1 to 50, inclusive, are unknown to Plaintiff

22  at this time, who therefore sues said DEFENDANTS by such fictitious names. Plaintiff will

23  amend this Complaint to show the true names, capacities, and/or relationships when the same

24  have been ascertained.

25  8.     Plaintiffs allege all or some of said fictitiously-named Defendants were

26  the principals, agents, joint ventures, partners, co-conspirators, employers, employees,

27  contractors, predecessors in interest and/or successors in interest to said Defendants, and are

28  responsible for the injuries and damages sustained by Plaintiffs, as more fully set forth below,

3

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1    and are residents of the State of California, are doing business in California and/or committed acts

2    pursuant to which they are under the jurisdiction of the State of California, and/or partners of each

3    and the other and as such are either joint tortfeasors and/or jointly and severally liable and legally

4    responsible in some manner for the events and happenings herein, and proximately caused the

5    injuries and damages to Plaintiffs as set forth herein.

6          9.      At all times herein mentioned, each of the Defendants was an agent, servant,

7    partner, aider and abettor, co-conspirator and/or joint venture of each of the other

8    Defendants herein and were at all times operating and acting within the purpose and scope

9    of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered

10   substantial assistance and encouragement to the other Defendants, knowing that their conduct

11   constituted a breach of duty owed to Plaintiffs.

12         10.     Plaintiffs have complied with all applicable claims and statutes under the law of

13   the state of California, including Section 395(a) of the California Code of Civil Procedure 2 and

14   12960(d).

15         11.     This is the Court of proper jurisdiction because the subject matter of this litigation

16   and some or all of the alleged torts and facts, conduct, breaches and/or omissions alleged in this

17   complaint occurred, transpired or were otherwise entered into in the County of Los Angeles, State

18   of California, and the residence and/or principal place of business of one or more of Defendants

19   is the County of Los Angeles.

20                      **FACTS PERTINENT TO ALL CAUSES OF ACTION**

21         12.     On March 3, 2020, the Los Angeles County Department of Public Health

22   published COVID-19 guidance for employers within Los Angeles County, including employers

23   in Vernon, stating that businesses should not require a healthcare provider's note for employees

24   or volunteers who are sick with acute respiratory illness to validate their illness. The guidance

25   also directed employers to consider strategies for protecting employees who are at higher risk for

26   adverse health complications, including cancelling large face-to-face meetings. Finally, the

27   guidance directed businesses to consider suspending operations if a significant number of

28   employees have close contact with a confirmed case of novel coronavirus.

4

13.     By March 16, 2020, interim guidance from the United States Center for Disease Control ("CDC") stated that employers should "actively encourage sick employees to stay home," and, specifically, "employees who have symptoms of acute respiratory illness" should stay home and not come to work until they are free of any symptoms for at least 24 hours. The same guidance directed employers to ensure that their sick leave policies are flexible, consistent with public health guidance, and "non-punitive" and, further, ensure that their employees are aware of these policies. The guidance further stated that "employees who appear to have acute respiratory illness symptoms (i.e., cough, shortness of breath) upon arrival to work or become sick during the day should be separated from other employees and be sent home immediately."

14.     The CDC also encouraged all employers to use videoconferencing for meetings whenever possible and, when not possible, "consider adjusting or postponing large meetings or gatherings" and/or hold meetings in "open, well-ventilated spaces." It also directed employers to increase ventilation by opening windows or adjusting air conditioning.

15.     On March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20 directing all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors in order to slow the rapid spread of COVID-19 within California.

16.     On March 19, 2020, Mr. Alvarado was 61 years old and a mechanic at the plant for DEFENDANT YAMAZAKI. Mr. Alvarado had worked for DEFENDANT YAMAZAKI for more than 21 years.

17.     Human Resources Manager, Lorena Trujillo (hereinafter "Ms. Trujillo") knew Mr. Alvarado well because she had worked with him for several years. Because she had worked with Mr. Alvarado for several years, Ms. Trujillo also knew that Mr. Alvarado was married and lived with his wife and two children.

18.     Mr. Alvarado was concerned because he was an older Latino male, overweight (5'7' and 280 pounds), and suffered from other health conditions, including diabetes, which made him at heightened risk of death or severe illness from COVID-19.

19.     Mr. Alvarado's family were all overweight which put them at heightened risk of

5

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1   death or severe illness if they contracted COVID.

2        20.    Mr. Alvarado had two children: Ana Cecilia Alvarado and Bryan Alvarado.

3        21.    When the State's stay at home order took effect, Mr. Alvarado went to Ms. Trujillo

4   and requested to go home on leave and stay home because he was terrified of catching COVID-

5   19 and bringing it home to his family.

6        22.    Mr. Alvarado's request to go out on leave was denied by the plant general

7   manager, DEFENDANT RODRIGUEZ who said that Mr. Alvarado could not stay home because,

8   "we have to keep production going." As such, if Mr. Alvarado stayed home, he would be

9   terminated.

10       23.    Instead, YAMAZAKI forced Mr. Alvarado to come into work every day, where

11  he was in close proximity to other employees who shared common areas, such as the breakroom

12  with no social distancing.

13       24.    YAMAZAKI also required Mr. Alvarado  to work side by side with several

14  employees who were visibly sick with COVID-19 symptoms.

15       25.    Throughout this period, Mr. Alvarado continuously asked his managers, Human

16  Resources personnel, and his supervisor, Ricardo, to implement COVID-19 safety protocols to

17  maintain him and his family from COVID-19 exposure and to create a safe working atmosphere.

18       26.    However, DEFENDANT YAMAZAKI refused to take any action in response to

19  Mr. Alvarado's requests and complaints.

20       27.    Mr. Alvarado also continuously requested reasonable accommodations on account

21  of his disability.  Again, YAMAZAKI failed to respond to Mr. Alvarado's repeated requests to

22  stay home to protect his heath, social distancing, and wearing masks at work.

23       28.    YAMAZAKI knowingly refused to protect their employees, including Mr.

24  Alvarado, despite the simplicity of the COVID protocols Mr. Alvarado requested and

25  YAMAZAKI's awareness that Mr. Alvarado and his family members with whom he lived had

26  disabilities that made them uniquely vulnerable to severe COVID-19.

27       29.    Mr. Alvarado was the sole provider for his family and was fearful of losing his

28  job. As such, he continued working.

6

30.     Mr. Alvarado's complaints included, but were not limited, to his concerns that employees were not screened before entering the building, there was no social distancing permitted, required, or enforced, and employees were allowed to come and stay at work when they were coughing, sneezing and having visible COVID-19 symptoms.

31.     Mr. Alvarado was in constant fear of catching COVID-19 and communicated that fear to YAMAZAKI management and Human Resources personnel also in addition to requesting to take leave to care for his own serious health conditions and those of his family.

32.     In connection with his request for the reasonable accommodation to stay home due to his high risk of serious illness or death if he contracted COVID-19, Mr. Alvarado also told YAMAZAKI management and HR that he was afraid to expose his family to COVID 19. Thus, YAMAZAKI was on notice that if Mr. Alvarado was exposed to COVID-19 in the workplace, it would mean the serious illness and possible death of Mr. Alvarado and his family members.

33.     YAMAZAKI failed to engage in the interactive process despite Mr. Alvarado communicating his request for reasonable accommodations, given his high at risk status for contracting COVID-19.

34.     YAMAZAKI was deliberately indifferent to the CDC COVID-19 guidelines by allowing employees to work side by side, shoulder to shoulder, with visible COVID-19 symptoms which ultimately caused Mr. Alvarado's death.

35.     YAMAZAKI ignored their duty to protect their employees' health and safety or provide Mr. Alvarado with the accommodation of staying home to protect his health.

36.     In or around late March 2020, DEFENDANT RODRIGUEZ, ignored COVID-19 safety guidelines regarding social distancing and limiting in-person meetings and conducted several meetings in a small indoor cafeteria packed with 20-50 people in close proximity with no social distancing or screening employees that entered for COVID-19 symptoms.

37.     Employees at these meetings attended coughing and sneezing with visible signs of COVID-19 and some not wearing masks.

38.     Mr. Alvarado attended one or more of these meetings.

39.     Shortly after attending one of these meetings, Mr. Alvarado fell ill with symptoms

1   consistent with COVID-19, and, on April 2, 2020, Mr. Alvarado was admitted to the hospital with

2   COVID-19 and intubated.

3        40.    Mr. Alvarado's entire family became sick with COVID-19 symptoms within days

4   of Mr. Alvarado being admitted to the hospital.

5        41.    To date, Mrs. Alvarado, Ana and Bryan still suffer serious debilitating COVID-19

6   symptoms and continue to have long term medical symptoms related to contracting COVID-19.

7        42.    Mr. Alvarado was a dedicated loving husband and father. Due to the COVID-19

8   hospital restrictions, Mr. Alvarado's family was not allowed to visit him in the hospital and when

9   he ultimately succumbed to COVID-19 on April 23, 2020, he died alone.

10        43.    Shortly after Mr. Alvarado's death, there was a complaint made to Cal-OSHA

11   regarding the COVID-19 outbreak at YAMAZAKI. Although a significant number of employees

12   contracted COVID-19, DEFENDANT RODRIGUEZ, contrary to the COVID-19 guidelines in

13   place at the time, refused to shut down the plant and failed to promptly report the spread of

14   COVID-19 in the plant to Cal-OSHA, insisting that "this is my plant and I will run it how I want

15   to."

16        44.    On April 5, 2020, while Mr. Alvarado was in the hospital, Los Angeles County

17   issued its first guidance regarding wearing face masks to prevent the spread of COVID-19.  Later

18   that month, on the evening of April 17, 2020, Los Angeles County issued an order requiring

19   employers of essential businesses to give all employees whose duties require contact with other

20   people a cloth face covering to wear while working with other people.  However, YAMAZAKI

21   did not distribute face coverings to its employees or require its employees to wear face masks

22   over their nose and mouth.

23        45.    Even after Cal-OSHA came out to YAMAZAKI in connection with complaints

24   that COVID-19 safety guidelines were not being followed, DEFENDANT YAMAZAKI did not

25   take any meaningful steps to improve COVID-19 safety at the workplace.  DEFENDANT

26   YAMAZAKI disregarded Cal-OSHA's findings and COVID safety guidance, and COVID safety

27   protocols at the plant remained minimal.

28        46.    Mr. Alvarado's untimely death and Mrs. Alvarado, Ana and Bryan's debilitating

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:
V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1  COVID-19 long haul symptoms were direct and foreseeable consequences of YAMAZAKI's
2  unlawful actions in this case.

3      47.    YAMAZAKI also failed to make timely and accurate reports to the health
4  Department regarding the number of employees that contracted COVID-19 and Mr. Alvarado's
5  COVID-19 related death.

6      48.    Mr. Alvarado's wife, Mrs. Alvarado and children, Ana and Bryan also lived in
7  daily fear during this time that Mr. Alvarado would become seriously ill and that the family could
8  also become seriously ill if he brought COVID home.

9      49.    As a result of contracting COVID-19 because of DEFENDANT YAMAZKI's
10  negligence and unlawful employment practices described above, Mr. Alvarado's family now
11  suffer long-term debilitating physical and psychological symptoms. Mrs. Alvarado's symptoms
12  include tiredness or fatigue, difficulty thinking or concentrating, joint or muscle pain, and
13  headaches. Ana's symptoms include tiredness or fatigue, difficulty thinking or concentrating,
14  joint or muscle pain, and change in smell or taste. Bryan's symptoms include tiredness or fatigue,
15  difficulty thinking or concentrating, joint or muscle pain, chest pain, and headaches.

16      50.    Because of DEFENDANT YAMAZAKI's negligence and unlawful employment
17  practices described above, Mr. Alvarado never came home from the hospital.

18      51.    Mr. Alvarado's untimely death and his family's debilitating illness with long-term
19  effects were direct and foreseeable consequences of DEFENDANT YAMAZAKI's negligence
20  and unlawful employment practices.

21      52.    As a result of DEFENDANT YAMAZAKI's actions and omissions, the Alvarado
22  family has lost: past and future wages; medical and funeral expenses; employment benefits; and
23  the value of goods and services that Mr. Alvarado would have provided for his family.

24      53.    Mr. Alvarado and his family suffered mental anguish, physical injury, pain, and
25  suffering. In addition to their lingering physical symptoms, Mr. Alvarado's family continues to
26  suffer from anxiety, depression, suicidal thoughts, flashbacks, and nightmares.

27      54.    Mr. Alvarado's family also suffered mental anguish and the loss of Mr. Alvarado's
28  care, protection, guidance, advice, training and nurturing, love, society, and companionship.

9

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*            V. James DeSimone, Esq.
Case No.:                                     Carmen D. Sabater, Esq.
                                               Emily C. Barbour, Esq.

1     Finally, Mrs. Alvarado suffered the loss of consortium and continues to suffer from

2     physical and severe psychological issues that hinder her ability to care for herself and to

3     maintain a healthy life balance.

4                      **FIRST CAUSE OF ACTION**

5        **DISABILITY DISCRIMINATION, VIOLATION OF §§12940 ET SEQ**

6                 **(All Plaintiffs Against YAMAZAKI)**

7        55.    PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

8     incorporates it into this cause of action as if it was fully alleged herein.

9        56.    At all times relevant to this matter, the Fair Employment and Housing Act and

10    Government Code section 12940 were in full force and effect and binding on Defendant.

11    Government Code section 12940, subdivision (a), reads: "It is an unlawful employment practice...

12    [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical

13    disability, mental disability, medical condition, genetic information, marital status, sex, gender,

14    gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or

15    employ the person or to refuse to select the person for a training program leading to employment,

16    or to bar or to discharge the person from employment or from a training program leading to

17    employment, or to discriminate against the person in compensation or in terms, conditions, or

18    privileges of employment."

19       57.    Mr. Alvarado suffered from a "physical disability", as defined by Government

20    Code section 12926, subdivision (k). In spite of his disability, Mr. Alvarado was able to perform

21    the essential functions of his position as defined by Government Code section 12926, subdivision

22    (f), and California Code of Regulations, title 2, section 11065, subdivision (e), and was otherwise

23    able to perform his job had DEFENDANT YAMAZAKI provided the reasonable accommodation

24    required by Government Code section 12926, subdivision (p), and California Code of

25    Regulations, title 2, section 11068, subdivision (a).

26       58.    DEFENDANT'S conduct violated Government Code section 12940, subdivision

27    (a), consistent with California Code of Regulations, title 2, section 11066. Specifically,

28    DEFENDANT YAMAZAKI and its management and supervisors, including DEFENDANT

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*         V. James DeSimone, Esq.
Case No.:                                  Carmen D. Sabater, Esq.
                                         Emily C. Barbour, Esq.

RODRIGUEZ, were aware of Mr. Alvarado's disabilities that made him susceptible to serious illness or death if he contracted COVID. In spite of his disabilities, Mr. Alvarado was able to perform the essential functions of his position with reasonable accommodations.

59.     As set forth above, DEFENDANT YAMAZAKI, by and through its management and supervisors, including DEFENDANT RODRIGUEZ, unlawfully discriminated against Mr. Alvarado because of his disability by denying him reasonable accommodations, to take leave from work and stay home, and/or a workplace where basic COVID-19 safety precautions were implemented and enforced.   DEFENDANT YAMAZAKI, by and through its management and supervisors, including DEFENDANT RODRIGUEZ, condoned an environment that, among other things, tolerated and encouraged discrimination based on disability that materially and negatively impacted the terms and conditions of Mr. Alvarado's employment.

60.     DEFENDANT YAMAZAKI violated FEHA through its decision to deny Mr. Alvarado reasonable accommodations and failure to engage in the interactive process.

61.     DEFENDANT YAMAZAKI's conduct, as manifested through the conduct of its management and supervisors, including DEFENDANT RODRIGUEZ, was a substantial factor in causing Mr. Alvarado to contract and become seriously ill with COVID-19 and, ultimately, die.

62.     As an actual and proximate result of the aforementioned violations, PLAINTIFFS, as the successors in interest of Mr. Alvarado, have been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.  PLAINTIFFS also seek "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket expenses, and any such other relief that this Court deems proper.

63.     As an actual and proximate result of DEFENDANT YAMAZAKI's willful and intentional discrimination against Mr. Alvarado because of his disability, PLAINTIFFS, as the successors in interest of Mr. Alvarado, have lost Mr. Alvarado's past and future wages, employment benefits, and other out-of-pocket expenses.

64.     PLAINTIFFS filed a complaint with the California Department of Fair

11

1   Employment and Housing ("DFEH").  On January 24, 2022, PLAINTIFFS received a "Right-to-

2   Sue" Letter from the California Department of Fair Employment and Housing.

3       65.   As a direct, foreseeable, and proximate result of the outrageous conduct of

4   DEFENDANT YAMAZAKI, by and through its management and supervisors, including

5   DEFENDANT RODRIGUEZ, Mr. Alvarado suffered physical injury, sickness, pain, emotional

6   distress, including fear, stress, anxiety, anger, mental pain and suffering, hospitalization, and,

7   ultimately, death.  PLAINTIFFS, as Mr. Alvarado's surviving spouse and children, lost Mr.

8   Alvarado's care, protection, guidance, advice, training and nurturing, love, society, and

9   companionship, medical and funeral expenses, Mr. Alvarado's past and future wages,

10  employment benefits, and the full value of his pension.  All of these losses constitute damages to

11  PLAINTIFFS in a sum within the minimum jurisdiction of this Court, to be ascertained according

12  to proof.

13      66.   PLAINTIFFS also seek wrongful death damages and all other damages and

14  remedies available under state law.

15      67.   PLAINTIFFS also plead for attorney fees and costs as allowed by California

16  Government Code § 12965(b).

17                        **SECOND CAUSE OF ACTION**

18    **FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS IN VIOLATION OF**

19                        **GOV'T CODE §§12940 ET SEQ**

20                        **(All Plaintiffs Against YAMAZAKI)**

21      68.   PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

22  incorporates it into this cause of action as if it was fully alleged herein.

23      69.   At all times relevant to this matter, the Fair Employment and Housing Act,

24  Government Code section 12940, was in full force and effect and binding on Defendants. Section

25  12940, subdivision (m), reads:  "It is an unlawful employment practice . . . [f]or an employer or

26  other entity covered by this part to fail to make reasonable accommodation for the known physical

27  or mental disability of an applicant or employee.  Nothing in this subdivision or in paragraph (1)

28  or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by

12

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*          V. James DeSimone, Esq.
Case No.:                                                              Carmen D. Sabater, Esq.
                                                                       Emily C. Barbour, Esq.

1  the employer or other covered entity to produce undue hardship, as defined in Section 12926(t),

2  to its operation."

3      70.    At all times relevant to this matter, Mr. Alvarado suffered from a "physical

4  disability" as defined by Government Code section 12926, subdivision (k), and the California

5  Code of Regulations, title 2, section 11065, subdivision (d)(1. In spite of his disability, Mr.

6  Alvarado was able to perform the essential functions of his position as defined by Government

7  Code section 12926, subdivision (f), and the California Code of Regulations, title 2, section

8  11065, subdivision (e), and was otherwise able to perform his job had DEFENDANT

9  YAMAZAKI provided the reasonable accommodation required by Government Code section

10 12926, subdivision (p), and the California Code of Regulations, title 2, section 11068, subdivision

11 (a).

12     71.    Mr. Alvarado provided notice relating to his disabilities and requested potential

13 accommodations. Despite Mr. Alvarado's disabilities, he was able to perform the essential duties

14 of his position with reasonable accommodations. However, DEFENDANT YAMAZAKI, by and

15 through its management and supervisors, including DEFENDANT RODRIGUEZ, repeatedly

16 refused to accommodate Mr. Alvarado regardless of the type of accommodation he requested.

17 DEFENDANT YAMAZAKI cannot establish that allowing Mr. Alvarado's reasonable

18 accommodation was an "undue hardship" as defined by Government Code section 12926,

19 subdivision (t), and the California Code of Regulations, title 2, section 11068. Accordingly,

20 DEFENDANT YAMAZAKI'S conduct violated Government Code section 12940, subdivision

21 (m).

22     72.    DEFENDANT YAMAZAKI'S failure to provide reasonable accommodation was

23 a substantial factor in causing harm to Mr. Alvarado and his heirs and successors in interest.

24     73.    As an actual and proximate result of DEFENDANT'S willful and intentional

25 failure to reasonably accommodate, PLAINTIFFS have been damaged in an amount according to

26 proof, but in an amount in excess of the jurisdiction of this Court. PLAINTIFFS also seek

27 "affirmative relief" or "prospective relief" as defined by Government Code section 12926,

28 subdivision (a), including reimbursement of out-of-pocket expenses, and any such other relief

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*          V. James DeSimone, Esq.
Case No.:                                                              Carmen D. Sabater, Esq.
                                                                       Emily C. Barbour, Esq.

1    that this Court deems proper.

2         74.    As an actual and proximate result of DEFENDANT'S willful and intentional

3    failure to reasonably accommodate Mr. Alvarado's disabilities, PLAINTIFFS, as the successors

4    in interest to Mr. Alvarado, lost Mr. Alvarado's past and future wages, employment benefits, and

5    other out-of-pocket expenses.

6         75.    PLAINTIFFS filed a complaint with the California Department of Fair

7    Employment and Housing ("DFEH"). On January 24, 2022, PLAINTIFFS received a "Right-to-

8    Sue" Letter from the California Department of Fair Employment and Housing.

9         76.    As a direct, foreseeable, and proximate result of the outrageous conduct of

10   DEFENDANT YAMAZAKI, by and through its management and supervisors, including

11   DEFENDANT RODRIGUEZ, Mr. Alvarado suffered physical injury, sickness, pain, emotional

12   distress, including fear, stress, anxiety, anger, mental pain and suffering, hospitalization, and,

13   ultimately, death. PLAINTIFFS, as Mr. Alvarado's surviving spouse and children, lost Mr.

14   Alvarado's care, protection, guidance, advice, training and nurturing, love, society, and

15   companionship, medical and funeral expenses, Mr. Alvarado's past and future wages,

16   employment benefits, and the full value of his pension. All of these losses constitute damages to

17   PLAINTIFFS in a sum within the minimum jurisdiction of this Court, to be ascertained according

18   to proof.

19        77.    PLAINTIFFS also seek wrongful death damages and all other damages and

20   remedies available under state law.

21        78.    PLAINTIFFS also plead for attorney fees and costs as allowed by California

22   Government Code § 12965(b).

23   ///

24   ///

25   ///

26

27

28

14

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*          V. James DeSimone, Esq.
Case No.:                                                              Carmen D. Sabater, Esq.
                                                                       Emily C. Barbour, Esq.

1

2

3

4

## THIRD CAUSE OF ACTION

### FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS IN VIOLATION OF GOV'T CODE §§12940 ET SEQ

#### (All Plaintiffs Against YAMAZAKI)

5    79.    PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

6    incorporates it into this cause of action as if it was fully alleged herein.

7    80.    At all times relevant to this matter, the Fair Employment and Housing Act,

8    Government Code section 12940, was in full force and effect and binding on DEFENDANT

9    YAMAZAKI. Government Code section 12940, subdivision (n), reads:  "It is an unlawful

10   employment practice . . . [f]or an employer or other entity covered by this part to fail to engage

11   in a timely, good faith, interactive process with the employee or applicant to determine effective

12   reasonable accommodations, if any, in response to a request for reasonable accommodation by an

13   employee or applicant with a known physical or mental disability or known medical condition."

14   81.    At all times relevant to this matter, Mr. Alvarado suffered from a "physical

15   disability" as defined by Government Code section 12926, subdivision (k), and the California

16   Code of Regulations, title 2, section 11065, subdivision (d)(1). In spite of his disability, Mr.

17   Alvarado was able to perform the essential functions of his position as defined by Government

18   Code section 12926, subdivision (f), and the California Code of Regulations, title 2, section

19   11065, subdivision (e), and was otherwise able to perform his job without being at risk of severe

20   illness and death had DEFENDANT YAMAZAKI, by and through its supervisory employees,

21   provided the reasonable accommodation required by Government Code section 12926,

22   subdivision (p), and the California Code of Regulations, title 2, section 11068, subdivision (a).

23   82.    Although Mr. Alvarado provided notice to DEFENDANT YAMAZAKI, by and

24   through its management, HR and supervisors, including DEFENDANT RODRIGUEZ, regarding

25   his physical disability, DEFENDANT YAMAZAKI failed to accommodate Mr. Alvarado's

26   disabilities as set forth above. Mr. Alvarado was willing to participate in an interactive process to

27   determine whether reasonable accommodation could be made.

28   ///

---

15

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

83.    DEFENDANT YAMAZAKI, by and through its management, HR and supervisors, including DEFENDANT RODRIGUEZ, failed to approach Mr. Alvarado to discuss the possible accommodation of his physical disabilities in good faith.  DEFENDANT YAMAZAKI'S obligation to engage in the interactive process of accommodation was not excused or waived by Mr. Alvarado.  Because DEFENDANT YAMAZAKI failed to engage in the important interactive process between employee and employer in determining reasonable accommodation, DEFENDANT YAMAZAKI'S conduct violated Government Code section 12940, subdivision (n).

84.    DEFENDANT YAMAZAKI'S failure to engage in a good-faith interactive process was a substantial factor in causing harm to Mr. Alvarado and PLAINTIFFS, his successors in interest.

85.    As an actual and proximate result of the aforementioned violations, PLAINTIFFS, as Mr. Alvarado's successors in interest, has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.  PLAINTIFFS also seek "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket expenses, and any such other relief that this Court deems proper.

86.    As an actual and proximate result of DEFENDANT YAMAZAKI'S willful and intentional failure to engage in a good-faith interactive process, PLAINTIFFS, as Mr. Alvarado's successors in interest, lost Mr. Alvarado's past and future wages, employment benefits, and other out-of-pocket expenses.

87.    PLAINTIFFS filed a complaint with the California Department of Fair Employment and Housing ("DFEH").  On January 24, 2022, PLAINTIFFS received a "Right-to-Sue" Letter from the California Department of Fair Employment and Housing.

88.    As a direct, foreseeable, and proximate result of the outrageous conduct of DEFENDANT YAMAZAKI, by and through its management, and supervisors, including DEFENDANT RODRIGUEZ, Mr. Alvarado suffered physical injury, sickness, pain, emotional distress, including fear, stress, anxiety, anger, mental pain and suffering, hospitalization, and,

16

1 ultimately, death.  PLAINTIFFS, as Mr. Alvarado's surviving spouse and children, lost Mr.

2 Alvarado's care, protection, guidance, advice, training and nurturing, love, society, and

3 companionship, medical and funeral expenses, Mr. Alvarado's past and future wages,

4 employment benefits, and the full value of his pension.  All of these losses constitute damages to

5 PLAINTIFFS in a sum within the minimum jurisdiction of this Court, to be ascertained according

6 to proof.

7      89.    PLAINTIFFS also seek wrongful death damages and all other damages and

8 remedies available under state law.

9      90.    PLAINTIFFS also plead for attorney fees and costs as allowed by California

10 Government Code § 12965(b).

11 **FOURTH CAUSE OF ACTION**

12 **FAILURE TO PREVENT DISCRIMINATION**

13 **(All Plaintiffs Against YAMAZAKI)**

14      91.    PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

15 incorporates it into this cause of action as if it was fully alleged herein.

16      92.    As an employer, pursuant to Government Code section 12926, subdivision (d),

17 DEFENDANT YAMAZAKI has a duty to prevent unlawful harassment and discrimination.

18 DEFENDANT YAMAZAKI knew or should have known about the discrimination based on Mr.

19 Alvarado's disability as set forth above.  DEFENDANT YAMAZAKI failed to implement

20 adequate training, policies, or instructions that would have prevented the aforementioned

21 discrimination of Mr. Alvarado.  DEFENDANT YAMAZAKI breached its duty to prevent the

22 discrimination of Mr. Alvarado.  Accordingly, DEFENDANT YAMAZAKI violated

23 Government Code section 12940, subdivision (k), and The California Code of Regulations, title

24 2, section 11019, subdivision (b)(3).

25      93.    Mr. Alvarado was subjected to discrimination in the course of his employment

26 with DEFENDANT YAMAZAKI described above.

27      94.    DEFENDANT YAMAZAKI failed to take all reasonable steps to prevent

28 discrimination and, instead, purposely adopted policies and practices that discriminated against

17

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1   employees whose disabilities made them vulnerable to death or serious illness from COVID-19.

2       95.    DEFENDANT YAMAZAKI's conduct was a substantial factor in causing harm

3   to Mr. Alvarado and his successors in interest.

4       96.    As an actual and proximate result of the aforementioned violations, PLAINTIFFS,

5   as the successors in interest to Mr. Alvarado, have been harmed in an amount according to proof,

6   but in an amount in excess of the jurisdiction of this Court. PLAINTIFFS also seek "affirmative

7   relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a),

8   including reimbursement of out-of-pocket expenses, and any such other relief that this Court

9   deems proper.

10      97.    As an actual and proximate result of DEFENDANT YAMAZAKI's willful and

11  intentional discrimination, PLAINTIFFS, as the successors in interest to Mr. Alvarado, lost Mr.

12  Alvarado's past and future wages, employment benefits, and other out-of-pocket expenses.

13      98.    PLAINTIFFS filed a complaint with the California Department of Fair

14  Employment and Housing ("DFEH"). On January 24, 2022, PLAINTIFFS received a "Right-to-

15  Sue" Letter from the California Department of Fair Employment and Housing.

16      99.    As a direct, foreseeable, and proximate result of the outrageous conduct of

17  DEFENDANT YAMAZAKI, by and through its supervisory employees, Mr. Alvarado suffered

18  physical injury, sickness, pain, emotional distress, including fear, stress, anxiety, anger, mental

19  pain and suffering, hospitalization, and, ultimately, death. PLAINTIFFS, as Mr. Alvarado's

20  surviving spouse and children, lost Mr. Alvarado's care, protection, guidance, advice, training

21  and nurturing, love, society, and companionship, medical and funeral expenses, Mr. Alvarado's

22  past and future wages, employment benefits, and the full value of his pension. All of these losses

23  constitute damages to PLAINTIFFS in a sum within the minimum jurisdiction of this Court, to

24  be ascertained according to proof.

25      100.   PLAINTIFFS also seek wrongful death damages and all other damages and

26  remedies available under state law.

27      101.   PLAINTIFFS also plead for attorney fees and costs as allowed by California

28  Government Code § 12965(b).

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*          V. James DeSimone, Esq.
Case No.:                                                               Carmen D. Sabater, Esq.
                                                                        Emily C. Barbour, Esq.

1

2

3

### FIFTH CAUSE OF ACTION

**Wrongful Death (Cal. Civ. Proc. Code § 377.60)**

**(All Plaintiffs Against YAMAZAKI)**

4      102.   PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

5   incorporates it into this cause of action as if it was fully alleged herein.

6      103.   PLAINTIFFS Maria, Ana, and Bryan Alvarado, the surviving spouse and children

7   of Mr. Alvarado, the decedent, assert a wrongful death action against all DEFENDANTS pursuant

8   to C.C.P. §§ 377.60 et seq. This claim is based upon the fact that DEFENDANT YAMAZAKI's

9   intentional, negligent, reckless, and wrongful acts and omissions in response to Mr. Alvarado's

10   requests for reasonable accommodations based on his disability, and violations of FEHA as

11   described above, were a direct and legal cause of Mr. Alvarado's death and the resulting damages

12   to PLAINTIFFS Maria, Ana, and Bryan Alvarado. As a result of its conduct by and through its

13   management and supervisory employees, including DEFENDANT RODRIGUEZ, and

14   DEFENDANT YAMAZAKI are liable for PLAINTIFFS' injuries, either because they were an

15   integral participant in the wrongful conduct, or because they failed to intervene to prevent these

16   violations.

17      104.   As Mr. Alvarado's employer, DEFENDANT YAMAZAKI and its management

18   and supervisory employees, including DEFENDANT RODRIGUEZ, owed a duty to use due care

19   in responding to Mr. Alvarado's requests for accommodations for his disability, including a

20   statutory duty to engage in a good-faith interactive dialogue with him.

21      105.   Mr. Alvarado repeatedly informed DEFENDANT YAMAZAKI, by and through

22   its management and supervisory employees, including DEFENDANT RODRIGUEZ, that he had

23   health conditions that placed him at heightened risk of severe illness or death from COVID-19

24   and needed appropriate accommodations, such as taking a leave from work and staying home.

25      106.   DEFENDANT YAMAZAKI, by and through its management and supervisory

26   employees, including DEFENDANT RODRIGUEZ, breached their duty of care ignoring and

27   declining Mr. Alvarado's requests despite his risk level.

28   ///

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*                    V. James DeSimone, Esq.
Case No.:                                                                       Carmen D. Sabater, Esq.
                                                                                Emily C. Barbour, Esq.

107.   In choosing to ignore Mr. Alvarado's requests for accommodations, DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, acted in a manner that was an extreme departure from what a reasonably careful person would do under the circumstances given Mr. Alvarado's high risk of severe illness and death because of his disability was not properly accommodated.

108.   DEFENDANT YAMAZAKI's breach of its duty of due care towards Mr. Alvarado, its twenty one year (21) dedicated employee, caused Mr. Alvarado to be exposed to, and contract, COVID-19 through a coworker at the plant.

109.   Mr. Alvarado's exposure to COVID-19 through a coworker at the plant was both a foreseeable and highly probable consequence of DEFENDANT YAMAZAKI'S failure to properly consider Mr. Alvarado's requests for accommodations such as taking a leave from work and staying home.

110.   Further, Mr. Alvarado had repeatedly informed DEFENDANT YAMAZAKI, through its management and supervisory employees, including DEFENDANT RODRIGUEZ, about his health conditions that made him uniquely vulnerable to death and/or serious illness from COVID-19. It also was widely known, reported, and understood during the COVID-19 pandemic in mid-March 2020, that hospitalization, intubation, and death were foreseeable results of COVID-19—particularly for older individuals, like Mr. Alvarado, with pre-existing conditions, including obesity, diabetes, and being a Latino elderly male. Accordingly, DEFENDANT YAMAZAKI, and its management and supervisory employees, including DEFENDANT RODRIGUEZ, should have known and foreseen that Mr. Alvarado would require hospitalization and intubation and would ultimately die because of their negligent failure to respond appropriately to Mr. Alvarado's requests for disability accommodations.

111.   As a direct and legal result of DEFENDANT YAMAZAKI'S acts and omissions, PLAINTIFFS Maria, Ana, and Bryan Alvarado, suffered damages, including, without limitation, the loss of financial support and benefits, loss of enjoyment of life, emotional distress, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained, the loss of Mr. Alvarado's love, affection, society, and companionship, and, for Ana

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1    Alvarado, the loss of consortium.

2        112.   PLAINTIFFS Maria, Ana, and Bryan Alvarado seek both survival and wrongful

3    death damages and all other damages and remedies available under state law.

4                              <u>SIXTH CAUSE OF ACTION</u>

5        **ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY**

6                          **(All Plaintiffs Against YAMAZAKI)**

7        113.   PLAINTIFFS re-allege the information set forth in the preceding paragraphs and

8    incorporates it into this cause of action as if it was fully alleged herein.

9        114.   Mr. Alvarado was subjected to a course or pattern of conduct by DEFENDANT

10   YAMAZAKI, by and through its management and supervisory employees, including

11   DEFENDANT RODRIGUEZ, that, taken as a whole, materially and adversely affected the terms,

12   conditions, or privileges of his employment that impaired his ability to work and eliminated his

13   prospects for future advancement, pay raises, or promotion. Specifically, DEFENDANT

14   YAMAZAKI, by and through its management and supervisory employees, including

15   DEFENDANT RODRIGUEZ, compelled Mr. Alvarado to work in conditions that it knew were

16   highly dangerous to his health and safety and in violation of State orders, rules, and regulations,

17   including but not limited to Labor Code Section 6401 which states: "Every employer shall furnish

18   and use safety devices and safeguards, and shall adopt and use practices, means, methods,

19   operations, and processes which are reasonably adequate to render such employment and place

20   of employment safe and healthful.  Every employer shall do every other thing reasonably

21   necessary to protect the life, safety, and health of employees." These conditions of employment

22   sickened Mr. Alvarado, put him in a hospital for several weeks, and, ultimately, killed him.

23       115.   It is a violation of public policy to compel an employee to work in unsafe and

24   potentially deadly conditions because of his disability.

25       116.   Mr. Alvarado's refusal to acquiesce to unsafe working conditions at the plant and

26   his insistence that he receive reasonable accommodations for his disability were both substantial

27   motivating reasons for DEFENDANT YAMAZAKI'S decision to compel him to come to work

28   in person in unsafe conditions despite the fact that employees were visibly sick with COVID

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:
                                                    V. James DeSimone, Esq.
                                                    Carmen D. Sabater, Esq.
                                                    Emily C. Barbour, Esq.

1  symptoms and COVID-19 safety protocols were not being enforced.

2  117.   Contrary to the public policy underlying Government Code section 12940,

3  DEFENDANT YAMAZAKI, by and through its management and supervisory employees,

4  including DEFENDANT RODRIGUEZ, compelled Mr. Alvarado to work in unsafe conditions

5  because he requested reasonable accommodations and complained about the lack of COVID-19

6  safety protocols at the office.

7  118.   DEFENDANT YAMAZAKI'S conduct, by and through its management and

8  supervisory employees, including DEFENDANT RODRIGUEZ, was a substantial factor in

9  causing PLAINTIFFS' harm.

10  119.   As an actual and proximate result of the aforementioned violations and

11  DEFENDANT YAMAZAKI'S willful and intentional wrongful adverse actions, PLAINTIFFS,

12  as the successors of interest to Mr. Alvarado, lost Mr. Alvarado's past and future wages,

13  employment benefits, and other out-of-pocket expenses and have been harmed in an amount

14  according to proof, but in an amount in excess of the jurisdiction of this Court.

15  120.   PLAINTIFFS also seek "affirmative relief" or "prospective relief" as defined by

16  Government Code section 12926, subdivision (a), including reimbursement of out-of-pocket

17  expenses, and any such other relief that this Court deems proper.

18  121.   PLAINTIFFS filed a complaint with the California Department of Fair

19  Employment and Housing ("DFEH") and received a "Right-to-Sue" Letter from the DFEH.

20  122.   As a direct, foreseeable, and proximate result of the outrageous conduct of

21  DEFENDANT YAMAZAKI, by and through its management and supervisory employees,

22  including DEFENDANT RODRIGUEZ, Mr. Alvarado suffered physical injury, sickness, pain,

23  emotional distress, including fear, stress, anxiety, anger, mental pain and suffering,

24  hospitalization, and, ultimately, death. PLAINTIFFS, as Mr. Alvarado's surviving spouse and

25  children, lost Mr. Alvarado's care, protection, guidance, advice, training and nurturing, love,

26  society, and companionship, medical and funeral expenses, Mr. Alvarado's past and future wages,

27  and employment benefits. All of these losses constitute damages to PLAINTIFFS in a sum within

28  the minimum jurisdiction of this Court, to be ascertained according to proof.

22

**SEVENTH CAUSE OF ACTION**

**NEGLIGENCE RESULTING IN INJURY TO THE ALVARADO FAMILY**

**(All Plaintiffs Against YAMAZAKI)**

123.   PLAINTIFFS re-allege the information set forth in the preceding paragraphs and incorporate it into this cause of action as if it was fully alleged herein.

124.   DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, knew that the Alvarado family had health conditions that made them highly vulnerable to serious illness or death from COVID-19. Mr. Alvarado had repeatedly informed DEFENDANT YAMAZAKI and its management and supervisory employees, including DEFENDANT RODRIGUEZ, that he needed to take a leave from work and stay home, and/or to work in a COVID-safe workplace because of his family's conditions.

125.   DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, owed a duty to Mr. Alvarado's family, to use due care to ensure that they did not become seriously ill through "take home" exposure to COVID-19 contracted at Mr. Alvarado's workplace.

126.   This duty encompassed but was not limited to following the rules and guidance concerning COVID-19 safety in offices and public places that were issued in March and April 2020 by the CDC, the State of California, including the Governor and CDPH, and Los Angeles County. It also required DEFENDANT YAMAZAKI, through its management and supervisory employees, including DEFENDANT RODRIGUEZ, to take additional steps to protect Mrs. Alvarado from "take home" exposure in the event that Mr. Alvarado was exposed to COVID-19 at the workplace.

127.   DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, breached this duty in all of the following ways:   failing to implement and enforce basic COVID-19 safety measures in at the plant, including masking, screening, and physical distancing; failing to take action in response to Mr. Alvarado's complaints concerning the failure to implement and enforce these measures and/or to

23

1   permit him to take leave and stay home so as to protect his family given their vulnerability to
2   serious illness and death from COVID-19; failing to abide by applicable state rules and
3   regulations concerning COVID-19 safety; forcing Mr. Alvarado to come to work in person and
4   work shoulder to shoulder employees with who were visibly ill with COVID-19 symptoms;
5   conducting meetings in a small indoor cafeteria packed with 20-50 people, without also requiring
6   and enforcing screening prior to entering the meetings or social distancing; denying Mr.
7   Alvarado's request for accommodations; failing to implement a policy to protect family members
8   from exposure to COVID-19 contracted in the workplace; and failing to take steps with respect
9   to Mr. and Mrs. Alvarado specifically after learning about Mr. Alvarado's likely exposure to
10  COVID-positive coworkers at the plant.

11        128.   Indeed, DEFENDANT YAMAZAKI'S noncompliance with the applicable
12  workplace safety guidance promulgated by the Los Angeles County Department of Public Health
13  and the California Department of Public Health constituted an extreme departure from what a
14  reasonably careful person would do in the same circumstances to prevent harm to the Alvarado
15  family and vulnerable members of other employees' households.

16        129.   DEFENDANT YAMAZAKI, by and through its management and supervisory
17  employees, including DEFENDANT RODRIGUEZ, breached their duty of due care towards the
18  Alvarado family, the spouse and children of its employee, thereby causing the Alvarado family
19  to contract COVID-19 through Mr. Alvarado.

20        130.   The Alvarado family sustained their own injuries and damages, independent from
21  those suffered by Mr. Alvarado, from their exposure to the COVID-19 virus that Mr. Alvarado
22  brought home from the plant. As a result of their own bout with COVID-19, the PLAINTIFFS,
23  Ana, Bryan, and Mrs. Alvarado, now suffer from long-term physical and psychological
24  symptoms, including, but not limited to, fatigue, brain fog and difficulty concentrating, joint
25  and/or muscle pain, and headaches. These lingering effects of their COVID-19 illness hinder
26  their ability to care for themselves and maintain a balanced life.

27        131.   Although they contracted COVID-19 from contact with and proximity to Mr.
28  Alvarado, Ana, Bryan, and Mrs. Alvarado's illnesses and injuries are independent of Mr.

1  Alvarado's, who was merely a conduit of the virus. They could have suffered the same or similar

2  injuries even if Mr. Alvarado had not become ill with COVID-19. Indeed, one of Mr. Alvarado's

3  worst fears, which he repeatedly conveyed to DEFENDANT YAMAZAKI, through its Human

4  Resources, management, and supervisory employees, including DEFENDANT RODRIGUEZ,

5  was that he would be a source of "take home" exposure for his  vulnerable family without

6  becoming seriously ill himself.

7       132.   Had DEFENDANT YAMAZAKI, by and through its management and

8  supervisory employees, including DEFENDANT RODRIGUEZ, not breached its duty of acting

9  with due care for the Alvarado family, they would not have been exposed to the COVID-19 virus

10  through contact with and proximity to Mr. Alvarado.

11       133.   Further, Ana, Bryan, and Mrs. Alvarado's illnesses and long-term symptoms from

12  being exposed to COVID-19 through contact with and proximity to Mr. Alvarado following his

13  exposure to a symptomatic individual with COVID-19 at the plant was not only a foreseeable

14  consequence but also a highly probable consequence of DEFENDANT YAMAZAKI'S breach of

15  its duty of due care for the Alvarado family.

16       134.   Further, Mr. Alvarado had repeatedly informed DEFENDANT YAMAZAKI,

17  through its management and supervisory employees, including DEFENDANT RODRIGUEZ,

18  about his family's health conditions that made them vulnerable to death and/or serious illness

19  from COVID-19.  It was widely known, reported, and understood during the COVID-19

20  pandemic in mid-March 2020, that severe illness was a foreseeable result of COVID-19—

21  particularly for individuals, like the Alvarado family, with pre-existing health conditions.

22  Accordingly, DEFENDANT YAMAZAKI, through its management and supervisory employees,

23  including DEFENDANT RODRIGUEZ, should have known and foreseen that the Alvarado

24  family would become severely ill and potentially suffer long-term symptoms as a result of its

25  breach of its duty of due care towards them.

26       135.   The negligence of DEFENDANT YAMAZAKI, by and through its management

27  and supervisory employees, including DEFENDANT RODRIGUEZ, caused Mrs. Alvarado, Ana,

28  and Bryan to endure severe pain and suffering during their bout with and recovery from COVID-

1  19, cost the Alvarado family medical expenses, and left Mrs. Alvarado, Ana, and Bryan with
2  severe and potentially permanent symptoms, including fatigue, difficulty concentrating, joint
3  and/or muscle plain, and headaches.

4      136.   PLAINTIFFS bring this claim against DEFENDANT YAMAZAKI seeking all
5  damages available under state law, including punitive damages, and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

### NEGLIGENCE PER SE (Cal. Labor Code § 6401)

### (All Plaintiffs Against YAMAZAKI)

9      137.   PLAINTIFF re-alleges the information set forth in the preceding paragraphs and
10 incorporates it into this cause of action as if it was fully alleged herein.

11      138.   DEFENDANTS, and each of them, at all times mentioned, were under a statutory
12 duty to comply with California Labor Code § 6401which asserts that, "Every employer shall
13 furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods,
14 operations, and processes which are reasonably adequate to render such employment and place
15 of employment safe and healthful. Every employer shall do every other thing reasonably
16 necessary to protect the life, safety, and health of employees."

17      139.   In or around March, 2020, DEFENDANT YAMAZAKI violated California Labor
18 Code § 6401 through its management, supervisors, including DEFENDANT RODRIGUEZ, by
19 not doing everything reasonably necessary to protect the life, safety, and health of its employees.

20      140.   As a direct and legal result of said violation, PLAINTIFF suffered the harm
21 hereinabove set forth.

22      141.   In doing the wrongful and intentional act as herein alleged, DEFENDANT
23 YAMAZAKI through its management, supervisors, including DEFENDANT RODRIGUEZ,
24 acted with oppression, fraud, and malice and with conscious and willful disregard for the health,
25 safety and general welfare and rights of PLAINTIFF. Such action was done with malice,
26 oppression and/or fraud and was and is despicable, shocking and offensive and entitles
27 PLAINTIFF to an award of punitive damages against DEFENDANTS in an amount to be
28 determined at trial.

26

## NINTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### (All Plaintiffs Against All Defendants)

142.   PLAINTIFFS re-allege the information set forth in the preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

143.   DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, knew that both Mr. Alvarado and his family had health conditions that made them highly vulnerable to serious illness or death from COVID-19 because Mr. Alvarado repeatedly informed them about these health conditions and his family's risk level.

144.   DEFENDANT YAMAZAKI, as Mr. Alvarado's employer, owed a duty to his family, to use due care to ensure that they did not unnecessarily experience severe emotional distress as a result of the actions of DEFENDANT YAMAZAKI and its management and supervisory employees, including DEFENDANT RODRIGUEZ.

145.   This duty encompassed but was not limited to following the rules and guidance concerning COVID-19 safety in offices and public places that were issued in March and April 2020 by the State of California and Los Angeles County.   It also required DEFENDANT YAMAZAKI and its management and supervisory employees, including DEFENDANT RODRIGUEZ, to take additional steps to protect Mrs. Alvarado and Ana and Bryan in the event that Mr. Alvarado was exposed to COVID-19 at the workplace.

146.   DEFENDANT YAMAZAKI breached this duty in all of the following ways: failing to implement and enforce basic COVID-19 safety measures in at the plant, including masking, screening, and physical distancing; failing to take action in response to Mr. Alvarado's complaints concerning the failure to implement and enforce these measures and/or to permit him to take leave and stay home so as to protect his family given their vulnerability to serious illness and death from COVID-19; failing to abide by the applicable state rules and regulations concerning COVID-19 safety; forcing Mr. Alvarado to come to work in person and work shoulder to shoulder employees with who were visibly ill with COVID-19 symptoms, conducting meetings

27

*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1   in close confinement with 20, 30 and up to 40 people and no social distancing; denying Mr.

2   Alvarado's request for accommodations; failing to implement a policy to protect family members

3   from exposure to COVID-19 contracted in the workplace; and failing to take steps with respect

4   to Mr. and Mrs. Alvarado specifically after learning about Mr. Alvarado's likely exposure to

5   COVID-positive coworkers at the plant.

6       147.   Indeed, DEFENDANT YAMAZAKI'S noncompliance with the applicable

7   workplace safety standards following the March, 2020 Stay at Home Order constituted an extreme

8   departure from what a reasonably careful person would do in the same circumstances to prevent

9   the Alvarado from experiencing severe emotional distress.

10       148.   DEFENDANT YAMAZAKI'S breach of its duty of due care towards the

11   Alvarado family caused them to live in fear for Mr. Alvarado and for themselves, always worried

12   them that they would become seriously ill or die as a result of DEFENDANT'S intentional refusal

13   to protect the Alvarado family's wellbeing.  It also caused them to endure the trauma of watching

14   Mr. Alvarado become sick, hospitalized, and intubated and ultimately die alone.  The trauma is

15   and was heightened because Mr. Alvarado's hospitalization and the onset of the family's

16   symptoms occurred in very quick succession.

17       149.   The Alvarado family's severe emotional distress inflicted through DEFENDANT

18   YAMAZAKI'S carelessness and negligence, and the carelessness and negligence of its

19   management and supervisory employees, including DEFENDANT RODRIGUEZ, was and is

20   independent from the physical injuries and emotional distress suffered by Mr. Alvarado.  The

21   Alvarado family experienced emotional distress every day knowing that Mr. Alvarado was being

22   forced to work in conditions that were not merely unsafe but, in fact, deadly to their family, even

23   before Mr. Alvarado became ill with COVID-19.  This emotional distress was heightened into

24   actual trauma when Mr. Alvarado was suddenly hospitalized for COVID-19 and the family fell

25   ill shortly thereafter.

26       150.   The long-term psychological effects of the trauma the Alvarado family endured

27   because of DEFENDANT YAMAZAKI'S carelessness and negligence may be permanent and

28   hinder their ability to care for themselves and maintain a balanced life.

151.   For the Alvarado family, the time period of Mr. Alvarado's hospitalization will always be a time of pain and grief because of what they endured as a result of the recklessness of DEFENDANT YAMAZAKI and its management and supervisory employees, including DEFENDANT RODRIGUEZ.  They must go through life knowing that Mr. Alvarado died an unnecessary and untimely death, and, but for the extreme carelessness of DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, he most likely would have lived to enjoy significant moments in their life, such as the college graduations of both his children, Ana and Bryan, and the retirement Maria and Pascual had been looking forward to and carefully planning together.

152.   Had DEFENDANT YAMAZAKI, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, not breached its duty of acting with due care for the Alvarado family, they would not have lived with near constant fear and anxiety of Mr. Alvarado and the family contracting COVID, then Mr. Alvarado being hospitalized and dying alone in a hospital room.

153.   Further, the Alvarado family's fear, emotional distress, and trauma was not only a foreseeable consequence but also a highly probable consequence of DEFENDANT YAMAZAKI'S breach of their duty of due care for the Alvarado family. DEFENDANT YAMAZAKI'S conduct as described above was done in a careless or negligent manner, without consideration for the effect of such conduct upon Plaintiffs, the Alvarado family's emotional well-being.

154.   As a result of its conduct, DEFENDANT YAMAZAKI is liable for the negligent infliction of emotional distress on the Alvarado family because it was, by and through its management and supervisory employees, including DEFENDANT RODRIGUEZ, an integral participant in compelling Mr. Alvarado to work in conditions that posed a known and constant threat to the both Mr. Alvarado and his family, because it failed to intervene to prevent or remedy these unsafe conditions, and/or pursuant to the doctrine of respondeat superior.

155.   PLAINTIFFS are informed and believe, and thereon allege, that the DEFENDANT YAMAZAKI, by engaging in the aforementioned acts and/or in authorizing

29

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Emily C. Barbour, Esq.

1   and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable

2   conduct, and acted with willful and conscious disregard of the rights, welfare, and safety of

3   PLAINTIFFS thereby justifying the award of exemplary damages and punitive damages against

4   DEFENDANTS in an amount to be determined at trial.

5                    <u>**TENTH CAUSE OF ACTION**</u>

6                    **LOSS OF CONSORTIUM**

7            **(Plaintiff Maria Alvarado Against YAMAZAKI)**

8            156.   PLAINTIFF MARIA ALVARADO re-alleges the information set forth in the

9   preceding paragraphs and incorporates it into this cause of action as if it was fully alleged herein.

10          157.   This cause of action is alleged against Defendant YAMAZAKI, which acted by

11  and   through   its   management   and   supervisory   employees,   including   DEFENDANT

12  RODRIGUEZ.

13          158.   Maria Alvarado was at all times relevant to this action defined as the wife of the

14  decedent, Mr. Alvarado.

15          159.   As a spouse of the decedent, Mrs. Alvarado can recover her losses through a

16  consortium cause of action because her injuries arise out of Mr. Alvarado's death as a result of

17  the unlawful employment actions of Defendant YAMAZAKI.

18          160.   But for Defendant YAMAZAKI's refusal to accommodate Mr. Alvarado's

19  disability and engage in a good faith interactive dialogue with Mr. Alvarado about reasonable

20  accommodations for his disability, Mr. Alvarado would not have died, and Mrs. Alvarado would

21  not have lost her husband.

22          161.   Mrs. Alvarado's trauma stemming from Defendant YAMAZAKI's needless,

23  reckless, and unlawful violations of FEHA have rendered her unable to work or perform normal

24  daily activities. As a further consequence, Plaintiff has lost Mr. Alvarado's care, protection,

25  guidance, advice, training and nurturing, love, society, and companionship, medical and funeral

26  expenses, Mr. Alvarado's past and future wages and employment benefits.

27          162.   Mrs. Alvarado continues to suffer severe emotional distress due to her inability to

28  work and to provide and care for herself and her family.

                                30

1          **PRAYER FOR RELIEF**

2          WHEREFORE, PLAINTIFFS pray that Judgment be entered in their favor and against

3    DEFENDANTS, and each of them, as follows, for:

4          1.     All special damages, according to proof;

5          2.     General damages for emotional distress and mental anguish in a sum according to

6    proof;

7          3.     Exemplary and punitive damages in a sum appropriate to punish Defendants and

8    set an example for others;

9          4.     Injunctive relief regarding COVID-19 policies and procedures regarding disabled

10   employees' accommodations;

11         5.     For prejudgment interest at the prevailing legal rate;

12         6.     Attorney's fees and costs as permitted based on above causes of action; and

13         7.     Such other and further relief as this Court may deem just and proper.

14

15   Date:  March 30, 2022                          **V. JAMES DESIMONE LAW**

16

17                                          By: _____

18                                          V. JAMES DESIMONE, ESQ.
                                            CARMEN D. SABATER
19                                          EMILY C. BARBOUR

20                                          Attorneys for Plaintiffs,
                                            MARIA ALVARADO, ANA
21                                          CECILIA ALVARADO, and
                                            BRYAN ALVARADO
22

23

24

25

26

27

28

31

1

## DEMAND FOR JURY TRIAL

2       PLAINTIFFS MARIA ALVARADO, ANA CECILIA ALVARADO, and BRYAN

3   ALVARADO hereby demand a trial by jury on all claims.

4

5   Date:  March 30, 2022                         **V. JAMES DESIMONE LAW**

6

7                                        By: _____

8                                        V. JAMES DESIMONE, ESQ.

9                                      CARMEN D. SABATER
                                   EMILY C. BARBOUR

10

11                                      Attorneys for Plaintiffs,
                                   MARIA ALVARADO, ANA

12                                      CECILIA ALVARADO, and
                                   BRYAN ALVARADO

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' COMPLAINT FOR DAMAGES**
*Maria Martha Alvarado et al v. Vie De France Yamazaki et al.*
Case No.:                                           V. James DeSimone, Esq.
                                                    Carmen D. Sabater, Esq.
                                                    Emily C. Barbour, Esq.